UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRITTANY M HUNT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-01505-RLY-MJD |
| | ) | |
| HUBLER CHEVROLET, INC., | ) | |
| BRADLEY MANAGEMENT GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON PLAINTIFF'S MOTION TO COMPEL

This matter is before the Court on Plaintiff's *Motion to Compel Responses to Plaintiff's First Interrogatories and Requests for Production*. [Dkt. 41.] For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.

### I. Background

In this action, Plaintiff alleges on April 9, 2018 she "purchased a new [Trax] from Defendants[,]" pursuant to a Retail Installment Contract and Security Agreement, traded in a Chevrolet HHR as a $550.00 trade allowance value toward the purchase, and paid a down payment totaling $1,500.00. [Dkt. 1 at 2.] On April 12, 2018, Plaintiff contends she inquired about a return period for the car but was told by Defendants there was no such option. [Dkt. 1 at 3.] On April 17, 2018, Plaintiff stated she received communication from the Defendants that she

must return the car to the dealership or that it would be reported as stolen.  [Dkt. 1 at 3.]  After finishing dinner with her two-year old son on the evening of April 17, 2018, Plaintiff was unable to start the vehicle, while parked in the lot outside the restaurant.  [Dkt. 1 at 3-4.]  Plaintiff contacted Hubler Automotive Group, Finance Department, to investigate the disabled car and stated she was told that "Defendants' threat to report the car as stolen was merely a bluff because Defendants had no right to repossession of the car."  [Dkt. 1 at 4.]  During or after her call to Hubler Finance, the Trax car alarm went off and "six police cars surrounded Plaintiff and her two-year-old son in the Trax . . . . Two of the police officers pointed guns at Plaintiff's head and ordered her out of the Trax."  [Dkt. 1 at 4.]  Police officers handcuffed the Plaintiff while assessing the situation; Plaintiff stated police told her they were investigating a stolen car report.  [Dkt. 1 at 4.]  After reviewing Plaintiff's paperwork regarding the vehicle transaction, Plaintiff stated "police expressed dismay that the Trax had been falsely reported as stolen, removed her handcuffs, and apologized . . . ."  [Dkt. 1 at 4.]  The Trax was unable to be started via its OnStar system, and Plaintiff asserted that a towing company called to the scene "confirmed that Defendants disabled the Trax through a remote system."  [Dkt. 1 at 5.]

On April 18, 2018, Plaintiff attempted to recover her trade in vehicle and her down payment from Defendants and claimed in order to receive her down payment, Defendants tried to persuade Plaintiff to sign a settlement agreement and release, which she did not sign, to ultimately waive Plaintiff's rights.  [Dkt. 1 at 5.]  On May 16, 2018, Plaintiff filed her complaint alleging the following counts: 1). Violation of 42 U.S.C. § 1981 citing race as a "motivating factor in Defendants' acts to prevent Plaintiff from enjoying the benefits and privileges afforded to her by law under the Retail Installment Contract and Security Agreement," 2). Violation of 42 U.S.C. § 1982 alleging Defendants "deprived Plaintiff of the same right to personal property that

2

is enjoyed by white citizens," 3). Violation of the Indiana Deceptive Trade Practice Act, Ind. Code §§ 24-5-0.5-1 *et seq*., 4). Wrongful Repossession, 5). Conversion, 6). Breach of Contract, 7). Assault, 8). Defamation, and 9). Intentional Infliction of Emotional Distress.  [*See* Dkt. 1.]

On August 21, 2018, Plaintiff served her *First Request for Interrogatories and Requests for Production* on Defendants. [Dkt. 41; Dkt. 42-3; Dkt. 42-5].  Defendants submitted their initial responses to Plaintiff's discovery requests on October 23, 2018.  [Dkt. 49 at 2.] Defendants additionally provided *supplemental* responses to Plaintiff's discovery on October 23, 2018; Defendants submitted *revised* supplemental responses to Plaintiff's same discovery and a privilege log on November 16-19, 2018.  [Dkt. 49 at 2.]  After the October 26, 2018 Discovery Conference held with the Magistrate Judge, the Court authorized the Plaintiff to file a motion to compel.  [Dkt. 41 at 1.]  Plaintiff filed her *Motion to Compel Responses to Plaintiff's First Interrogatories and Requests for Production* on November 27, 2018.  [*See* Dkt. 41.].

In relevant part, the Plaintiff's motion moves the Court to issue an order to compel Defendants to 1). "produce Defendant Bradley Automotive Group, Inc.'s 2017 tax returns . . . and 2018 tax returns after they are filed", 2). "produce responsive corporation documentation for Bradley Automotive Group, Inc.", 3). "provide responsive documents regarding Plaintiff's financing or respond that there are no responsive documents" regarding steps taken to finance the Plaintiff's purchase; 4). "produce responsive documents related to On-Star and the disabling of Plaintiff's car", 5). "produce documents related to [Defendants'] other reports or attempted reports of stolen cars", and 6). order Defendants to "directly respond to Plaintiff's Interrogatories Nos. 4, 5, 7, and 9, or clearly state there is no responsive information[.]"  [Dkt. 41-1 at 1-2.] Plaintiff's motion additionally moves the Court to find Defendants waived all objections by failing to timely respond to Plaintiff's discovery requests pursuant to the Federal Rules of Civil

Procedure and to award the Plaintiff appropriate fees and costs affiliated with filing Plaintiff's *Motion to Compel*.  [Dkt. 41-1 at 1-2.]

## II. Legal Standard

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses.  Fed. R. Civ. P. 37(a)(2)-(4).  The burden "rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.,* 235 F.R.D. 447, 449–50 (N.D. Ill. 2006).  The objecting party must show with specificity that the request is improper. *Graham v. Casey's Gen. Stores,* 206 F.R.D. 251, 254 (S.D. Ind. 2002).  That burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Burkybile v. Mitsubishi Motors, Corp.,* 2006 WL 2325506 at *6 (N.D. Ill. 2006) (internal citations omitted).

Under Federal Rule of Civil Procedure 26(b)(1), generally "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Relevancy is construed broadly and encompasses "any matter that bears on, or reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. Daimler Chrysler*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (internal citations omitted).  Relevant information does not need to be "admissible to be discoverable." Fed. R. Civ. P. 26(b)(1).  The Court addresses the discovery requests in turn.

## III. Discussion

### A. Waiver

Under Federal Rule of Civil Procedure 33(b)(2), "The responding party must serve its answers and any objections within 30 days after being served with the interrogatories." Regarding production of documents, Federal Rule of Civil Procedure 34(b)(2)(A) requires that "[t]he party to whom the request is directed must respond in writing within 30 days after being served . . . ." Plaintiff served her *First Requests for Production and Interrogatories* on August 21, 2018 and did not receive Defendants' responses until October 10, 2018; a total of "50 days after receiving the discovery via-email (the discovery was also served via U.S. Mail on the same day)." [Dkt. 42 at 3.] On September 26, 2018, after discovery responses were to be due, Plaintiff contacted Defendants to inquire about when the responses would be received. [Dkt. 49-1 at 1.] At that time, Defendants acknowledged and apologized for the delay of their responses and stated, "We are just waiting on signature and any additional documents for the discovery[.]" [Dkt. 49-1 at 1.]

On September 27, 2018, during a telephonic status conference with the Magistrate Judge, Defendants represented to the Court they had submitted an email to Plaintiff in effort to request more time for discovery. Plaintiff argued Defendants made no attempt to request an extension to submit discovery responses. [Dkt. 42 at 3.] The Court questioned the veracity of the Defendants' representation, after it found no evidence to support the communication of an extension request. Defendants' *Response to Plaintiff's Motion* stated that though during the September 27, 2018 initial pretrial conference with the Court, "Plaintiff objected" to the Defendants' discussion of an extension to time to respond to discovery, "Defendants believed the parties agreed at that time that responses would be submitted by October 10, 2018." [Dkt. 49 at 1-2.] Defendants'

*Response* also noted a "dispute" as to "whether or to what exten[t] this occurred." [Dkt. 49 at 2.] Further, the Court had no extension to rule upon as evidenced by its September 27, 2018 Minute Entry.[1] [*See* Dkt. 28.]

"A shorter or longer time [to respond to discovery] may be stipulated to under Rule 29 or be ordered by the court." *See* Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 33(b)(2)(A). The Court finds no evidence of an extension request or agreed upon stipulation by the parties. "Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). The Court finds Defendants have not demonstrated good cause for their discovery delay when Plaintiff had to contact Defendants to inquire about the receipt of discovery, Defendants did not attempt to make an extension request prior to the 30-day discovery deadline, and Defendants took excessive time to obtain "signatures" they conveyed to Plaintiff to be the only reason for delay.[2] "Failure to timely assert objections to discovery requests may result in a waiver of all objections that could have been seasonably asserted." *Autotech Techs. Ltd. P'ship v. Automationdirect.Com, Inc.*, 236 F.R.D. 396, 398 (N.D. Ill. 2006); *Stelor Prods., Inc. v. Oogles N Googles*, No. 1:05-cv-0354-DFH-TAB, 2008 WL 5062786, at *1-*4 (S.D. Ind. Nov. 21, 2008) (waiver of all objections for failure to timely object and disregard of court order). Defendants argued delay of discovery responses in this case do not warrant waiver, as this occurrence was not a "most egregious violation,"[3] "there was no substantial delay, no prejudice to Plaintiff . . . ." [Dkt. 49 at 4.] The Court does not agree:

---

[1] In effect, a request for an extension to respond to discovery did not happen prior to or during the September 27, 2018 telephonic status conference, and no such extension was ever granted.

[2] The Court notes that Defendants' responses to Plaintiff's Requests for Production did not require signatures, and therefore, would not fall under the rationale provided by Defendants articulating the reason for their delayed discovery responses.

[3] The Court notes that Defendants do not cite any case law to support this contention.

Throughout the range of the law, there are time limits imposed on litigants at every stage of the case: some are mandatory and admit of no deviations; others are more flexible. But in each instance, lawyers who do not pay heed to deadlines do so at substantial peril to their and their clients' interests. Even a day's delay can be fatal.

*Autotech Techs. Ltd. P'ship*, 236 F.R.D. at 399.

Plaintiff contended once discovery responses were received on October 10, 2018, "[Defendants] objected to every request and did not produce a single document." [Dkt. 41 at 1.] Through the submission of *supplemental* responses and *revised* supplemental responses, Defendants admit "we have removed substantially all the objections that previously existed . . . . Additionally, even though we have asserted an objection, we have answered all the interrogatories where an objection was lodged in an extensive manner." [Dkt. 49-5 at 1-2.] The Court finds that the Defendants' have waived all objections to Plaintiff's *First Interrogatories and Requests for Production*, both the initial and remaining objections, for their failure to timely respond under the Federal Rules of Civil Procedure. In conjunction with its finding of waiver, the Court will continue its analysis of each specific discovery request presented in Plaintiff's *Motion to Compel* along with each of Defendants' remaining objections.

**B. <u>Request for Production No. 17: Tax Returns</u>**

Plaintiff's Request for Production No. 17, submitted to all Defendants, requested production of Defendants' "tax returns (state, federal, and local) and supporting schedules for the past 3 years." [Dkt. 42-3 at 8.] Defendants asserted an objection in its *revised* supplemental responses for Hubler Chevrolet and Bradley Management Group that the information sought is "irrelevant and unlikely to lead to the discovery of admissible evidence." [Dkt. 42-2 at 8; Dkt. 42-1 at 6.] Defendants argued information present on the requested tax returns was not "at issue in this case" and specifically stated "[t]he financial status of [Bradley Management Group] . . . was not involved in the allegations being made against Plaintiff." [Dkt. 42-2 at 8; Dkt. 42-1 at

6.] The Court will not address the Defendants' objections regarding Request for Production No. 17 because the parties narrowed the document request and agreed to a more limited production.

At the October 26, 2018 Discovery Conference, the Plaintiff and Defendants stipulated to the production of "2017 tax returns only, to be supplemented with 2018 returns after they are filed." [Dkt. 42 at 5.] Defendants produced the 2017 tax returns for Hubler prior to the filing of Plaintiff's *Motion to Compel* but had not yet provided 2017 tax returns for Bradley Management Group. [Dkt. 42 at 6.] Defendants contended during the Discovery Conference they "believe[d] there was only reference to Hubler's 2017 tax return . . . . It was not until Plaintiff's November 21, 2018 email, that Defendants learned that Plaintiff also wanted the tax return for Bradley." [Dkt. 49 at 6.] Defendants produced the Bradley tax return shortly after the Plaintiff's *Motion to Compel* was filed. [Dkt. 49 at 6.] Plaintiff's *Reply in Support of Plaintiff's Motion to Compel*, filed on December 28, 2018, acknowledged "only one issue was resolved: Defendants provided the 2017 tax return for Defendant Bradley Automotive . . . ." [Dkt. 52 at 1.] Thus, the Court **GRANTS Plaintiff's Motion to Compel with regard to Request for Production No. 17**, and orders the Defendants to produce both 2017 and 2018 tax returns for Hubler and Bradley Management Group.

### C. **Request for Production No. 18: Corporate Records**

Plaintiff's Request for Production No. 18 submitted to Defendants requested production of "Your official corporate records including: (i) bylaws; (ii) articles of incorporation; (iii) organization charts; and (iv) lists of shareholders." [Dkt. 42-3 at 8.] Defendants raise relevancy and the unlikeliness the production would lead to discovery of admissible evidence objections in their *revised* supplemental responses; Defendants additionally argued "the corporate status of Defendant is not at issue." [Dkt. 42-2 at 8; Dkt. 42-1 at 6.] Plaintiff asserted that while

Defendants objected to the request, production of "particularly unhelpful documents . . . the publicly available information . . . the 1961 Certificate of Incorporation for Nankivell Chevrolet, Inc. (without any documents tying Nankivell Chevrolet, Inc. to Hubler Chevrolet, Inc. or Hubler Automotive Group)" occurred. [Dkt. 42 at 6.]

Defendants contend that Bradley Management Group may be an improper party and that Bradley "does not have any other documentation regarding its relationship or corporate formation, including any type of organization chart, except that which has already been provided." [Dkt. 49-6 at 5; Dkt. 49 at 6.] Defendants claimed that Bradley Management Automotive "does not sell cars nor deal with Hubler Chevrolet customers." [Dkt. 42-1 at 2.] In further communication, Defendants contend Bradley Management Group "operates the on-site repair shop," "is essentially the clerical/accounting wing," and "forwards any deal package to the finance company." [Dkt. 49-6 at 2; Dkt. 42 at 6.] In Defendants' *Response*, Defendants suggest that for those "additional questions regarding these corporate entities for which documentation does not exist, [Plaintiff] is free to pursue it through a Rule 30(B)(6) deposition(s)." [Dkt. 49 at 7.]

The Court finds the Defendants have waived their objections to Plaintiff's Request for Production No. 18 due to their untimely discovery responses. Furthermore, even if the waiver had not occurred, the Court would overrule Defendants' objections to Plaintiff's Request for Production No. 18 on the merits.

> When discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

*Chavez v. Daimler Chrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002). As relevance

is construed broadly, the Court finds Plaintiff's request for the specified corporate documents of both Defendants are "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action [and] . . . the importance of the discovery in resolving the issues . . . ."  Fed. R. Civ. P. 26(b)(1).  Plaintiff's corporate document requests seek to determine the operational structure and connection between Defendants Hubler and Bradley Automotive, as it pertains to the Plaintiff's transaction involving purchase of the Trax, in an effort to determine proper parties tied to Plaintiff's claims.  As Defendants have placed Defendant Bradley Management Group's role "at issue," contending it is an "improper party" in the litigation, it would follow that discovery of the requested corporate documentation would shed further light on the determination of these assertions.  The Court finds the Defendants have failed to carry their burden to show lack of relevance, and in turn, also rejects Defendants' admissibility objection.  Discovery of information, under Federal Rule of Civil Procedure 26(b), is not determinative upon the question of admissibility of evidence; that which is inadmissible, is still discoverable "unless otherwise limited" by the Court.  Fed. R. Civ. P 26(b)(1).

The Court finds those corporate documents that were produced to Plaintiff, namely publicly found information and certificate of incorporation, provide little to no nexus to Defendant Hubler and fail to comply with Plaintiff's discovery request.  In latter response to Plaintiff's disputed discovery items, Defendants claim "Bates 96-157 are articles of incorporation and corporate status documents we have for Hubler and Bradley Mgmt Group" and additional organizational questions perhaps are more suited for deposition discovery.[4]  [Dkt. 49-

---

[4] The Court notes that simply because additional discovery tools could be used to attain requested information and the fact such different tools are proffered as more adequate or

5 at 4; Dkt. 49 at 7.] "Federal Rule 37 addresses discovery disputes and is designed to be used by litigants to compel a response to discovery requests where none has been made, or where the response is so inadequate that it is tantamount to no response at all." *Tomanovich v. Glen,* No. IP 01-1247 CY/K, 2002 WL 1858795, at *2 (S.D. Ind. Aug. 13, 2002). Plaintiff's Request for Production No. 18 narrowly tailors the corporate document information sought; Defendants' limited production response does not comply with Federal Rule of Civil Procedure 37 and constitutes an "evasive or incomplete disclosure" that neither answers the specifications of the discovery request, nor provides clarity regarding what information does or does not exist. "Plaintiff seeks a clear response that Defendants possess no other documentation." [Dkt. 52 at 4.]

For the foregoing reasons, **the Court GRANTS Plaintiff's Motion to Compel with regard to Request for Production No. 18**, and orders Defendants Hubler and Bradley Management Group to provide a complete and unequivocal response of requested corporate documentation, **on or before March 11, 2019.**

### D.  Request for Production Nos. 1-3: Responsive Documents Regarding Financing

Plaintiff contends Defendants failed to provide requested documents responsive to Requests for Production Nos. 1, 2, and 3, pertaining to "the denial of [Plaintiff's] financing and [Defendants'] financial procedures in general." [Dkt. 42 at 7.] The relevant requests for production are as follows:

(1) Produce all Documents related to Brittany Hunt's financing for the Trax, including her application, all Communications YOU had with any Lender (including GM Financial), and the denial of financing that YOU allegedly received on or about April 17, 2018.

---

favorable by the responding party, it does not create a valid objection or allowance to fail to clearly and completely respond to the method of discovery at hand.

(2) Produce all documents and communications with GM Financial and/or any other Lender related to Brittany Hunt.

(3) Produce all documents related to Your policies, procedures, guidelines, training materials, and other communications with Your employees, agents, and contractors related to Your process for financing the purchase of vehicles that were in effect in April 2018.

[Dkt. 42-3 at 4.]

The Court finds the Defendants have waived their objections to Plaintiff's Requests for Production Nos. 1-3 due to their untimely discovery responses. The Court notes Defendants' initial responses to Plaintiff's Requests for Production Nos. 1-3 raised objections that the requests were "vague, ambiguous, overly broad, and assumes facts which are disputed in this litigation[,]" lack relevance and admissibility, and are not applicable to Defendant Bradley Management Group as it "had no dealings with Plaintiff or her financing." [Dkt. 49-10 at 1-2; Dkt. 49-12 at 1-2.] In both Defendants' *supplemental* and *revised* supplemental responses, the aforementioned objections were withdrawn; therefore, the Court will not address the merits of those objections.[5]

Plaintiff asserted Defendants "only produced [one] document that is connected to Plaintiff specifically" being GM Financial's Conditional Credit Approval; other production included "generic screen shots of [Defendants'] web-based program to obtain financing" and other "nonresponsive documents." [Dkt. 42 at 7.] Plaintiff's *Motion to Compel* argued during the course of receiving information from GM Financial, through Plaintiff's Third Party Subpoena for documents, "GM Financial informed Plaintiff that Defendants never submitted Plaintiff's loan package to GM Financial, but if they had and GM Financial denied the

---

[5] The Court notes that while objections have been withdrawn and *supplemental* and *revised* supplemental answers have been provided, this does not excuse Defendants from providing complete and responsive documents to Plaintiff's requests.

application, Defendants were obligated to attempt to obtain financing for Plaintiff from one of their other lenders." [Dkt. 42 at 7.][6]

At first, in Defendants' *supplemental* responses to Plaintiff's Requests for Production Nos. 1-3, Defendants retract their initial objections and state there are "[n]o other responsive documents" or "[n]o additional documents in Defendant's possession." [Dkt. 49-12 at 1-2; Dkt. 49-10 at 1-2]. Defendants *revised* supplemental responses to Plaintiff's Request for Production Nos. 1-3 seem to back away from this stance indicating GM Financial would have received: 1). a conditional decision printed from web-based platform RouteOne, utilized to request financing from lenders Defendants use, 2). a signed credit application from RouteOne, 3). a vehicle order agreement, 4). an installment contract or lease agreement; 5). an odometer statement, 6). an agreement to provide insurance form, and 7). a power of attorney to transfer titles. [Dkt. 42-2 at 1-2; Dkt. 42-1 at 1-2.] Defendants list bates numbers for the aforementioned documents but the Court finds the *revised* responses are unclear as to whether the documents are specific to the Plaintiff's financial application package or are merely "generic" forms to provide examples of a customer's application package; specifically the Defendants' state "GM Financial would have been sent the following documentation" and not that the lender "was" sent the specific documentation regarding the Plaintiff. [Dkt. 42-2 at 1-2; Dkt. 42-1 at 1-2.] Defendants stated "submission instructions for GM Financial" were enclosed, that Defendants use FedEx to deliver "contract packages," and that Defendant Bradley Management Group "handles the actual mailing of the package." [Dkt. 42-2 at 2; Dkt. 42-1 at 2.] Defendants claim they "can no longer access the application or history from Plaintiff's transaction in RouteOne . . . [and] included a

_____

[6] Plaintiff's *Motion to Compel* notes that at the time of filing, Plaintiff was still awaiting written GM Financial responses to Plaintiff's Third Party Subpoena.

screenshot of what the RouteOne request form looks like . . . and also what the screen looks like in a conditional decision situation like Plaintiff's." [Dkt. 42-2 at 2.] Defendants also submitted an "Automotive Careers Today" (bates nos. 61-88) in response to Plaintiff's Request for Production No. 3, regarding policies, guidelines, and training related to the purchase of vehicles since April, 2018. [Dkt. 49-10 at 2.]

Defendants' *Response* to Plaintiff's motion stated "Defendants' revised supplemental responses . . . provided all of the documentation that [Hubler] has with respect to Plaintiff." [Dkt. 49 at 7.] Defendants contend that Plaintiff's information as submitted through RouteOne "is no longer available," and that Plaintiff is "welcome to subpoena records from RouteOne in the event that it stored documents or information to which Defendants no longer have access to." [Dkt. 49 at 7.] Perhaps most equivocally, Defendants admit "GM Financial is the only lender from which Hubler requested financing on behalf of Plaintiff, and GM Financial's response regarding conditional approval has already been produced." [Dkt. 49 at 7.]

Plaintiff "seeks discovery responses that, after eliminating baseless objections, simply states 'none' where Defendants do not possess any relevant documents or information[,]" regarding obtaining financing for Plaintiff. [Dkt. 52 at 4.] The Court agrees with the necessity of this request. Defendants initial, *supplemental*, and *revised* responses create confusion as to if and to what extent documentation surrounding Plaintiff's purchase transaction exists, the specific financial steps taken when providing service to the Plaintiff, the general steps taken with customers seeking purchase of a vehicle, and the procedures surrounding obtaining financing with GM Financial and additional potential lenders. The Court finds that Defendants' limited production responses to Plaintiff's Requests for Production Nos. 1-3 do not comply with Federal Rule of Civil Procedure 37 and are an "evasive or incomplete disclosure" that neither answer the

specifications of the discovery request, nor provide clarity regarding what information does or does not exist.

For the foregoing reasons, **the Court GRANTS Plaintiff's Motion to Compel as to Request for Production Nos. 1-3**, and orders Defendants Hubler and Bradley Management Group to provide a complete and unequivocal response thereto, **on or before March 11, 2019.**

### E. Request for Production No. 5: Documents Disabling the Trax

In Plaintiff's Request for Production No. 5, Plaintiff inquired about a "kill switch" in the Trax, more precisely defined as a "device installed in a car that enables [Defendant] to remotely disable the vehicle, such as the device installed in the Trax that was used to disable the Trax on or about April 17, 2018." [Dkt. 42 at 8.] In relevant part, Plaintiff's Request for Production 5 is as follows:

> Produce all documents related to the kill switch installed in the Trax, including Your contract or agreement to purchase the kill switch, policies and procedures related to the determination whether to install a kill switch, instructions and guidelines regarding when to use a kill switch to disable a car, and the notice given to the customer regarding the installation and use of the kill switch.

Defendants' initial response to Plaintiff's request regarding the kill switch asserted an objection for vagueness, ambiguity, and being overbroad. [Dkt. 49-12 at 3; Dkt. 49-10 at 3.] Defendants withdrew this objection in their *revised* supplemental responses, and therefore, in conjunction with the Court's finding of waiver of all of Defendants' objections, the Court need not address this objection on its merits.

Defendant Bradley Management Group stated Plaintiff's Request for Production No. 5 was "not applicable" because it "does not sell cars nor deal with Hubler Chevrolet customers . . . [and] does not deal with kill switches or OnStar in any vehicle." [Dkt. 42-1 at 3.] Defendant Hubler stated there were no documents to produce because the "Defendant does not use kill

switches" and proceeded to explain what the service OnStar is, how customers can opt out, and provided the enrollment "User Terms" and "Privacy Statement" for OnStar. [Dkt. 42-2 at 4.] Plaintiff was unable to start the vehicle upon leaving the restaurant with her child, the Trax was disabled when the police arrived on the scene, and the Trax was not reactivated for the Plaintiff's use after the incident. [*See* Dkt. 1.] Plaintiff asserted this "generic description of OnStar" does not adequately respond to her Request for Production No. 5. [Dkt. 42 at 8.] Additionally, in Defendants' *revised* responses to Interrogatory No. 3, Defendant Bradley Management claimed no involvement with the ability to disable a vehicle, as it does not sell cars or deal directly with customers; however, Defendant Hubler stated it "cannot remotely disable a vehicle via OnStar without police involvement." [Dkt. 42-4 at 3.] Further, Defendant Hubler admitted it was "aware that OnStar was used by the police to disable the vehicle in the instant case . . . ." [Dkt. 42-4 at 3.] In a further email to Plaintiff's counsel shortly before the filing of Plaintiff's motion, Defendants state they "honestly do not have any idea what [disabling] code [Plaintiff is] referring to" and continued to discuss the requirement of police involvement to actively shut down the vehicle after Hubler's stolen car report. [Dkt. 49-6 at 3.]

Plaintiff argued that "[i]f Defendants used OnStar to disable the Trax, then they are obligated to produce their OnStar contract or agreement, as well as instructions and guidelines, including whatever document contained the code that Defendants used to disable [the] Trax." [Dkt. 42 at 8.] Defendants *Response* stated that contrary to Plaintiff's conversations with the Lafayette Police Department, Defendants did not have a "dealer code" to disable or reactivate the Trax and that "numerous misstatements and mischaracterizations have been made by others in this litigation . . . [that] do not provide a basis for Plaintiff to continue to request information which Defendants informed her does not exist." [Dkt. 49 at 8.] Defendants claim they contacted

IMPD and that the police then contacted OnStar, which located and ultimately disabled the Trax. [Dkt. 49 at 9.]

Plaintiff seeks "an objection-free response that states that Defendants possess no responsive information." [Dkt. 52 at 5.] The Court finds that Defendants' limited production of the description, demonstrative application, and buyer "User Terms" and "Privacy Statement" for OnStar do not directly address the Plaintiff's drafted request. To state Defendants do not use "kill switches" and that a car cannot be disabled without police involvement does not fully provide a complete response to Plaintiff's request surrounding the ability and procedure necessary for a car to be disabled. The Court finds Defendants' responses fail to comply with Federal Rule of Civil Procedure 37 and are an "evasive or incomplete disclosure" that neither answer the specifications of the discovery request, nor provide clarity regarding what information does or does not exist. Rather, the responses shift focus directly to IMPD and/or OnStar.

For the foregoing reasons, **the Court GRANTS Plaintiff's Motion to Compel with regard to Request for Production No. 5**, and orders Defendants Hubler and Bradley Management Group to provide a complete and unequivocal response to requested documentation regarding disabling of the Trax, **on or before March 11, 2019.**

### F. **Request for Production No. 12 & Interrogatory No. 1: Stolen Car Reports**

Plaintiff's Request for Production No. 12 provides in relevant part as follows:

Produce all documents related to Your reports or attempted reports of stolen vehicles to the police from 2016 to the present.

[Dkt. 42-2 at 6; Dkt. 42-1 at 4.] Defendants asserted an initial objection stating "vague, ambiguous, overly broad[,]" relevance, and lack of admissibility grounds. [Dkt. 49-10 at 5; Dkt. 49-12 at 6.] In Defendant Bradley Management Group's *revised* response, the objection is

retracted and the response asserted there were no documents to provide as the request is "not applicable to this Defendant . . . . [who] does not sell cars nor deal with Hubler Chevrolet customers." [Dkt. 42-1 at 4-5.] In Defendant Hubler's *revised* response, the objection is retracted and the response asserted there were no additional documents "aside from the police reports produced by Plaintiff." [Dkt. 42-2 at 6.] As Defendants withdrew their objections and in conjunction with the Court's finding of waiver of all of Defendants' objections, the Court need not address these objections on the merits.

Plaintiff argued Request for Production No. 12 was not a request concerning IMPD records but specifically sought "Defendants' reports or attempted reports" related to other stolen car police reports. [Dkt. 42 at 9.] In Plaintiff's Interrogatory No. 1, which inquired about the identification of "all instances between 2016 and the present where [Defendants] told any person if he/she did not return a car, [Defendants] would report the car to the police as stolen[,]" Defendant Hubler listed Plaintiff's case along with two additional cases; one involved a rental car that was not returned, and the other the failure to return a car after "an extended drive." [Dkt. 42-4 at 1.] Defendants' acknowledgement of other stolen car incidents in response to Plaintiff's Interrogatory No. 1 lacks complete information, namely any helpful information related to the date of the occurrences or the identification of the parties involved. [Dkt. 42 at 9; Dkt. 42-4 at 1.] Further, the Court finds it difficult to reconcile Defendant Hubler's Interrogatory No. 1 response with its Request for Production No. 12 response, in that no Defendant documents exist to support the additional incidents, aside from the matter at hand. Plaintiff's motion submits the parties have "exchanged documents related to another young African-American female customer, Carrie Armour, who Defendants also claimed stole her car when they were allegedly unable to verify her employment after selling her the car." [Dkt. 42 at 9.] Plaintiff argued

Defendants have produced no documentation regarding Armour, in terms of charges filed, the customer's nonpayment, or any insurance claims filed. [Dkt. 42 at 10.] Defendants asserted they have "identified the aforementioned incidents to the best of their recollection, belief and knowledge[,]" and were never able to have a conversation with Armour and have produced the "entire file they have remaining" on her. [Dkt. 49 at 9-10.] Defendants stated "there are other police reports . . . [but] these are not incidents where Defendants could have or did contact the individual about reporting the vehicle as stolen." [Dkt. 49 at 9.]

The Court notes that Plaintiff has served a *Second Request for Production* requesting "canceled or rescinded Retail Installment Sales Contracts, claims of stolen cars to insurance, and other Settlement Agreements" Defendants' customers have signed, to which Defendants claim they are working to produce, though these requests were not among Plaintiff's first set of requests. [Dkt. 42 at 10; Dkt. 49 at 10.] Plaintiff contended these documents are the kinds of materials that would have been responsive to Request for Production No. 12. [Dkt. 42 at 10.] The Court agrees and notes Defendants made no attempt to provide any documentation responsive to Defendants' "reports or attempted reports of stolen vehicles to the police from 2016 to the present." [Dkt. 42-2 at 6.]

Plaintiff's *Reply* stated "police reports subpoenaed by Defendants show that Defendants have called the police to attempt to file stolen car reports against three additional African-American women who had rightful possession of their cars." [Dkt. 52 at 5.] Plaintiff "requests objection-free responses." [Dkt. 52 at 5.] The Court finds Defendant Hubler's responses to Plaintiff's Request for Production No. 12 and Interrogatory No. 1 fail comply with Federal Rule of Civil Procedure 37 and are an "evasive or incomplete disclosure" that neither answer the

specifications of the discovery request, nor provide clarity regarding what information does or does not exist.

For the foregoing reasons, **the Court GRANTS Plaintiff's Motion to Compel with regard to Request for Production No. 12 and Interrogatory No. 1**, and orders Defendant Hubler to provide a complete and unequivocal response to the specific identification of instances of stolen car reports from 2016 to present, as well as the requested documentation regarding documents related to other stolen police reports, **on or before March 11, 2019.**

### G. <u>Interrogatories</u>

Plaintiff submitted a number of first interrogatories to Defendants, of which Plaintiff's *Motion to Compel* cited dispute with Nos. 4, 5, 7, 8, and 9. [Dkt. 42]. Defendant Bradley Management Group responded to Interrogatory Nos. 4-9 stating the Defendant had no direct "dealings or interactions" with Plaintiff, was not involved in any contractual relationship with Plaintiff, and only would have received and mailed the contract package to GM Financial. [Dkt. 49-13 at 2-3.] The Court has deemed all Defendants' objections, including those remaining in their *Revised Responses*, waived; therefore, the Court will not discuss Defendant Bradley Management Group's remaining objections on the merits, as these will be discussed concerning Defendant Hubler. The Court finds Defendant Bradley Management Group's responses to Interrogatory Nos. 4-9 have provided clear, complete, and unequivocal responses to Plaintiff's requests and will address the discovery dispute in terms of Defendant Hubler's responses.

Defendant Hubler's responses to Interrogatory Nos. 4, 8, and 9 raise an objection that the information requested "calls for a narrative response which is appropriate for deposition questioning only." [Dkt. 42-4 at 3, 6.] The Court notes that even if a deposition might discover the requested information, the party serving requests during the discovery process has many tools

at its disposal.  The Court finds Defendants' objection baseless and invalid.  Defendant Hubler's

responses to Interrogatory Nos. 5, 8, and 9 point back to Defendant's response to Interrogatory

No. 7.  The Court will further discuss Interrogatory No. 7, in numerical order of the

interrogatories in dispute, in the latter part of this Order.  Plaintiff requests that Defendants

"provide objection-free responses that state a direct and separate answer to each Interrogatory."

[Dkt. 52 at 5.]

The Court will specifically address each disputed interrogatory as referenced below.

**Interrogatory No. 4:** Identify all of Your efforts to obtain financing for Brittany Hunt,
including the "third-party finance source" referenced in the Settlement Agreement and
Release that You asked Brittany Hunt to sign, HUNTHUBLER0019.

[Dkt. 42-4 at 3.]  In response, Defendant Hubler recounted that it ran a credit check for Plaintiff,

Plaintiff "completed various financing forms," Defendant used RouteOne to request financing

from GM Financial, and after speaking to the lender, a conditional decision was received.  [Dkt.

42-4 at 3.]  Defendant Hubler claimed Plaintiff was informed numerous times that she would

need to produce her employment verification, that she then informed Defendant she lost her job,

and no financing approval was completed.  [Dkt. 42-4 at 3.]  Plaintiff's Interrogatory No. 4

specifically asked Defendant Hubler to "identify all [Defendant's] efforts to obtain financing . . .

."  [Dkt. 42-4.]  Defendant's general response does not state what "various financing forms"

were collected from Plaintiff to obtain financing, does not indicate how Defendant corresponded

with Plaintiff to discuss employment verification, how the Plaintiff was contacted, or by whom

the Plaintiff was contacted, as just some examples of the responses' confusing and incomplete

nature.  In Defendant's own acknowledgement pursuant to their follow-up email to Plaintiff, the

response does not address details regarding the settlement agreement referenced in Interrogatory

No. 4. [Dkt. 49-6 at 2.]  Defendants stated that relevant "individuals are identified in Interrogatory No. 9," and that additional actions were not taken.  [Dkt. 49 at 11.]

The Court finds Defendant Hubler's response to Plaintiff's Interrogatory No. 4 fails to comply with Federal Rule of Civil Procedure 37 and is an "evasive or incomplete disclosure" that neither answers the specifications of the discovery request, nor provides clarity regarding what information does or does not exist.

For the foregoing reasons, **the Court GRANTS Plaintiff's Motion to Compel with regard to Interrogatory No. 4**, and orders Defendant Hubler to provide a complete and unequivocal response, **on or before March 11, 2019.**

In Defendant Hubler's *revised* response to Interrogatory No. 5, Defendant refers only to the response it submitted to Interrogatory No. 7.  [Dkt. 42-4 at 3.]  In relevant part, Plaintiff's request is as follows:

**Interrogatory No. 5:**  Identify all efforts that You took to verify Brittany Hunt's employment.

[Dkt. 42-4 at 3.]  Defendant Hubler's response to Interrogatory No. 7 stated that Plaintiff was aware that the Trax purchase was "contingent on verification of employment [and] Plaintiff was told repeatedly she that she would not be approved for financing until she submitted an employment verification . . . ."  [Dkt. 42-4 at 6.]  The response continued that Plaintiff was told "numerous times on April 9, 2018 by multiple individuals . . . and repeatedly over the next week . . . ."  [Dkt. 42-4 at 6.]  Defendants' response mentioned the Error and Omission/Compliance Agreement in which "Plaintiff agreed to fully cooperate in providing loan closing documents."  [Dkt. 42-4 at 6.]  Plaintiff argued that this reference to Interrogatory No. 7's response does not answer Interrogatory No. 5, particularly "what actions Defendants' took" and that if Defendants took no other action

22

besides instructing the Plaintiff employment verification documents needed to be produced, their response should so state accordingly. [Dkt. 42 at 11.] Defendants' response provides no information as to what kind of documentation was required, if any particular employment verification forms were provided to Plaintiff, the specifics of the various instances Defendants allegedly attempted to contact Plaintiff regarding her employment, or any steps independently used to verify employment.

Defendants' *Response* stated, "it was not Hubler that was to verify Plaintiff's employment, but rather, Plaintiff who was told that she needed to produce employment verification as a condition of her financing . . . . No other actions were taken, and so no other actions were described . . . . If none other were described, it is safe to assume none others were taken." [Dkt. 49 at 10-11.] Plaintiff's Interrogatory No. 5 did not ask what actions Defendant Hubler was "obligated" to perform; rather, the request asked for what actions Defendant Hubler did in fact take. Thus, the Court finds Defendant Hubler's response to Interrogatory No. 5 is insufficient. Plaintiff seeks a clear response to Interrogatory No. 5, which the Court finds to be a separate and different request than Interrogatory No. 7. Therefore, Defendant Hubler should respond to Interrogatory No. 5 independently. The Court finds Defendant Hubler's response to Plaintiff's Interrogatory No. 5 fails to comply with Federal Rule of Civil Procedure 37 and is an "evasive or incomplete disclosure" that neither answers the specifications of the discovery request, nor provides clarity regarding what information does or does not exist.

For the foregoing reasons, **the Court GRANTS Plaintiff's Motion to Compel with regard to Interrogatory No. 5**, and orders Defendant Hubler to provide a complete and unequivocal response, **on or before March 11, 2019.**

As acknowledged previously, Interrogatory No. 7 specifically requests the following:

> **Interrogatory No. 7:** Identify all contractual provisions showing that the Retail Installment Contract and Security Agreement between Hubler Chevrolet, Inc. and Brittany M. Hunt was a pending and not final contract on April 9, 2018.

[Dkt. 42-4 at 6.]  Though Defendant Hubler provided a response to this interrogatory, the Court finds the response again does not directly answer the question asked; Defendants provide no information of what employment information was requested, how this request was communicated to Plaintiff, how the Plaintiff was "aware the purchase of the vehicle was contingent on verification of employment," or any clarification involving the content of the Retail Installment Contract and Security Agreement.  [Dkt. 42-4 at 6.]  The Court finds Defendant Hubler's response to Plaintiff's Interrogatory No. 7 fails to comply with Federal Rule of Civil Procedure 37 and is an "evasive or incomplete disclosure" that neither answers the specifications of the discovery request, nor provides clarity regarding what information does or does not exist.

For the foregoing reasons, **the Court GRANTS Plaintiff's Motion to Compel with regard to Interrogatory No. 7**, and orders Defendant Hubler to provide a complete and unequivocal response, **on or before March 11, 2019.**

Defendants again referred to Interrogatory No. 7 in the response to Interrogatory No. 8, which reads as follows:

> **Interrogatory No. 8:** Identify all communications with Brittany Hunt related to whether her purchase of the Trax was not yet final between April 9, 2018 and April 17, 2018.

[Dkt. 42-4 at 6.]  The Court finds Interrogatory No. 8 to be a separate request for the actual identification of "all communications" with the Plaintiff regarding the Trax purchase being contingent or not finalized.  In turn, Defendant Hubler has not provided any specific communication between April 9, 2018 and April 17, 2018; rather, the response continues to be

circular in unidentified multiple individuals allegedly telling the Plaintiff on unidentified multiple occasions about the contingency of the sale due to a need for employment verification. The Court finds Defendant Hubler's response is unclear, unspecific, and lacking of relevant details responsive to Plaintiff's request.

The Court finds Defendant Hubler's response to Plaintiff's Interrogatory No. 8 fails to comply with Federal Rule of Civil Procedure 37 and is an "evasive or incomplete disclosure" that neither answers the specifications of the discovery request, nor provides clarity regarding what information does or does not exist.

For the foregoing reasons, **the Court GRANTS Plaintiff's Motion to Compel with regard to Interrogatory No. 8**, and orders Defendant Hubler to provide a complete and unequivocal response, **on or before March 11, 2019.**

Plaintiff's Interrogatory No. 9 seeks information regarding Defendant's "basis" for reporting the Trax stolen by the Plaintiff. [Dkt. 52 at 5.] The request is as follows:

> **Interrogatory No. 9:** Identify all facts, witnesses, documents, communications, and any other evidence that support that the Trax was stolen by Brittany Hunt.

[Dkt. 42-4 at 7.] Defendants again reference their response in Interrogatory No. 7 along with Plaintiff's credit application, reference to Plaintiff's text messages with Hubler employee, Tyler Parr, and lists "relevant witnesses." [Dkt. 42-4 at 7.] Plaintiff contended "[t]here is no factual dispute that Defendants told Ms. Hunt that they were going to report her car stolen and then called the police and followed through on their threat. Plaintiff is entitled to know their basis for doing so." [Dkt. 52 at 5.] Defendants stated it "fully explained its dealings with Plaintiff to the IMPD [who], according to their own protocol, took a stolen vehicle report." [Dkt. 49 at 11.] While the Court does acknowledge the question of whether the car was in fact stolen has yet to be determined as a question of law, the responses provided by Defendant Hubler to Interrogatory

No. 9 are insufficient, incomplete, or lacking clarity.  In its response, Defendant Hubler does not clearly identify what facts, witnesses, or communications exist to support a call and report to the police that the vehicle had been stolen.  Defendants' *Response* brief mentioned its dealings with IMPD but this is not described within Interrogatory No. 9.  Plaintiff seeks "an objection-free, direct response to her Interrogatory."  [Dkt. 52 at 5.]

The Court finds Defendant Hubler's response to Plaintiff's Interrogatory No. 9 fails to comply with Federal Rule of Civil Procedure 37 and is an "evasive or incomplete disclosure" that neither answers the specifications of the discovery request, nor provides clarity regarding what information does or does not exist.

For the foregoing reasons, **the Court GRANTS Plaintiff's Motion to Compel with regard to Interrogatory No. 9,** and orders Defendant Hubler to provide a complete and unequivocal response, **on or before March 11, 2019.**

### Award of Attorney Fees & Costs

In Plaintiff's *Motion to Compel*, Plaintiff requested that "this Court award her fees and costs incurred in bringing the instant Motion."  [Dkt. 41 at 2.]  Pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), if a motion to compel is granted or disclosure or discovery is provided after filing, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Plaintiff argued expenditures in excess of "15 hours on letters, phone calls, e-mails, preparing the instant Motion, and attending the Discovery Conference."  [Dkt. 42 at 4.]  The Court hereby authorizes to Plaintiff to file a motion for fees with supporting documentation **within fourteen days of the date of this Order.**

## IV. Conclusion

Based on the foregoing, Plaintiff's *Motion to Compel Responses to Plaintiff's First Interrogatories and Requests for Production* is **GRANTED**. Defendants Hubler Chevrolet, Inc. and Bradley Management Group, Inc. d/b/a Hubler Automotive Group are **ORDERED** to provide complete and unequivocal responses to Plaintiff's discovery requests as set forth herein, **on or before March 11, 2019.**

SO ORDERED.

Dated: 4 MAR 2019

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.